IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**LAMAR FREEMAN**                                                                                               **PLAINTIFF**

**v.**                                       **NO. 3:02-CV-00039 GTE**

**CATERPILLAR INDUSTRIAL, INC.,**
**and JOHN DOES I-X**                                                 **DEFENDANTS**

## ORDER

On July 17, 2006, the Court issued an Order holding in abeyance Defendant Caterpillar's Motion for Summary Judgment and requesting additional briefing from the parties on specified issues in this products liability claim. (Docket No. 47). The parties have now submitted the additional briefing. In addition, Defendant Caterpillar Industrial, Inc. has moved in limine to exclude the opinion testimony of Plaintiff's expert, Thomas Berry.

For the reasons stated herein, the Court concludes that both of Caterpillar's motions must be denied.

## FACTUAL OVERVIEW

In March of 2000, Plaintiff Lamar Freeman was seriously injured when he was pinned between a forklift and a bin in which he was working. Mr. Freeman had been operating the forklift prior to the accident. He contends that he placed the forklift in neutral and set the parking brake before dismounting the forklift, leaving the engine running. The forklift was on level ground. The forklift is alleged to have jumped into gear and traveled in reverse before striking Plaintiff.

Nucor-Yamato Steel, Plaintiff's employer, purchased the forklift used in 1987.

Defendant Caterpillar manufactured the forklift, a V80E, in 1984.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

In its July 17th Order, the Court invited the parties to discuss certain issues related to the application of products liability law in Arkansas. Those issues are identified more particularly in said Order (Doc. # 47) which is incorporated herein by reference.

Caterpillar contends that Plaintiff's defect claim fails because the evidence is insufficient to prove product defect or failure to warn. Caterpillar further claims that the proposed alternative design is not feasible. This Court will discuss these three issues before concluding with a discussion of Caterpillar's *Daubert* challenge to Thomas Berry's testimony.

### I. Design Defect Claim

It appears the Plaintiff's theory of defect is based on the forklift's failure to include a safety device to prevent unmanned movement of the forklift in the event of a false neutral transmission or parking brake failure, both of which Plaintiff argues are foreseeable events

associated with the normal use of the forklift.[1]

To prevail, Plaintiff must prove, *inter alia*, that Caterpillar supplied the product in a defective condition that rendered it unreasonably dangerous and that the defective condition was the proximate cause of the plaintiff's harm. See Ark. Code Ann. § 4-86-102(a)(Repl. 1996); *E.I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983). A "defective condition" is a condition that renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(4) (1987). A product is "unreasonably dangerous" if it is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable user, assuming the ordinary knowledge of the community of similar users as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training or experience possessed by the user or which he was required to possess. *See* Ark. Code Ann. § 16-116-102(7)(1987).

The forklift was designed with three gear positions: forward, neutral, and reverse. In addition, the forklift was equipped with a park brake lever, which was designed to move the forklift from a forward or reverse position to neutral. In other words, the forklift was designed so that, whether the transmission was in gear or not, when the parking brake was applied it would shift the transmission into neutral automatically. The forklift's transmission was not equipped with a "park" position.

Here, Plaintiff Freeman is anticipated to contend that he shifted the forklift into neutral

---

[1] There is no serious argument that the Court can rule at this time on the foreseeability issues. Therefore, the Court accepts for purposes of the present motion that the evidence is sufficient to permit the jury to find that the parking brake's failure and the transmission's potential for "false neutrals" were foreseeable and created an unsafe condition.

- 3 -

and applied the parking brake before getting off the forklift and leaving it running.[2] Assuming Mr. Freeman did either, the forklift did not operate as designed because after Mr. Freeman exited the forklift and while working with his back to the forklift, the forklift began moving across a flat level surface on its own power and pinned Mr. Freeman against a bin.

Plaintiff contends that the product's failure, which permitted the unmanned movement of the forklift, was foreseeable to Caterpillar at the time it manufactured the forklift. Plaintiff further contends that the forklift was supplied in a defective condition because it failed to include some safety feature to guard against the unmanned movement of the machine. In support of its defect theory, Plaintiff tenders the expert testimony of Thomas Berry, a mechanical engineer. Mr. Berry is anticipated to testify that the accident occurred because the transmission was not in true neutral. He has proposed the addition of an "operator presence sensing system." (Exh. 11 to Berry's deposition). The Court will also refer to such system as a deadman's switch, as have the parties. Mr. Berry's proposed addition to the forklift would have included a mechanism whereby the engine would die if a forklift operator got out of the seat before the engine was neutralized.[3] It is a matter of common sense that this accident would not have occurred if the forklift had not been running when Mr. Freeman exited the forklift.

---

[2] The Court is somewhat uncertain as to whether Plaintiff is now backing off what appeared to be his clear statement that he both placed the transmission in neutral and engaged the parking brake before exiting the forklift. It appears that Plaintiff may now be acknowledging the possibility that he may have forgotten to engage the parking brake. Either way, this factual dispute does not appear material to the Court's rulings on the present motion.

[3] Because Mr. Berry's proposed system would only kill the engine if the transmission was not neutralized when the operator exited the forklift, it would not appear to prevent the operator from exiting the forklift and leaving the machine running as long as it was truly in a neutralized position. Thus, Mr. Berry's proposed design would not require the engine to be killed every time a forklift operator exits the machine, which is one of Caterpillar's criticisms of his design.

- 4 -

### (A) Insufficient Evidence of Defect

Caterpillar contends that Plaintiff has failed to come forward with sufficient evidence to show that the product was defective at the time it left Caterpillar's control and possession. The focus of the present pleadings is on whether the forklift was defective for failing to include an operator presence safety system or deadman's switch as proposed by Mr. Berry.[4] Caterpillar points to the fact that there is evidence of misuse and improper maintenance of the parking brake. Thus, Caterpillar contends, Plaintiff's defect theory must fail unless he proves that improper alteration or repair did not cause the accident.

To address this argument, the Court must determine whether this particular allegation of design defect requires the Plaintiff to negate non-defect causes of the accident as part of his case-in-chief. In conducting this analysis, it is important to acknowledge that Caterpillar is not seeking summary judgment on the issue of intervening proximate cause. Instead, Caterpillar requests that the Court focus its analysis on whether Mr. Freeman has come forward with sufficient evidence of product defect. (See Def.'s Br., doc. # 54 at p. 13).

Here, Plaintiff is not contending that the forklift was defectively manufactured. Nor is he contending that the product was defective <u>because</u> the parking brake or neutral transmission feature failed. Rather, Plaintiff contends that such failures were foreseeable by Caterpillar at the time it manufactured the forklift and thus, the forklift was defective by design because it lacked a safety feature that would have prevented the foreseeable hazard of unmanned movement of the

---

[4] This appears to be the Plaintiff's primary contention of defect and the sole issue discussed in Caterpillar's motion to exclude Mr. Berry's testimony. The Court notes that Mr. Berry has mentioned the product's failure to include a park lock as well but such is not adequately briefed for the Court's consideration either on summary judgment or as a *Daubert* challenge. Nor is it clear whether Mr. Berry intends to offer any testimony of defect other than the lack of an operator presence safety system, as described above, and, if so, whether such additional defect theories are timely asserted and supported by admissible opinion testimony.

forklift. Accordingly, Caterpillar's reliance on manufacturing defect cases appears misplaced.

The Court must next determine whether Mr. Freeman must negate the parking brake's failure as a cause of the accident as part of his design defect case-in-chief. It is acknowledged that the condition of the parking brake and improper maintenance of the forklift will be relevant to the issues of proximate cause at trial, but as the Court has already pointed out, Caterpillar has elected to focus its summary judgment effort on whether the product was defective at the time it left Caterpillar's control rather than proximate causation.

Plaintiff contends that the forklift's propensity to slip into gear after an operator had placed the transmission in neutral was foreseeable by Caterpillar at the time of its manufacture. Mr. Berry acknowledged that the parking brake was not working properly at the time of the accident, but he claims to have satisfied himself that the forklift's failure to return to neutral was not due to a missing part or improperly assembled parking brake, but rather the result of ongoing wear, which Caterpillar should have foreseen.[5] (Berry depo., at p. 31).

The evidence presented indicates that there is a fact issue regarding the condition of the parking brake at the time of the accident. When Caterpillar's expert, Mr. Johnson, inspected the forklift on April 9, 2002, approximately two years after the March 17, 2000, accident, he determined that the component that caused the parking brake, when applied, to neutralize the transmission had been misassembled, effectively disabling the neutralizing function. Conversely, Mr. David Bridges, Nucor's safety director, testified that the forklift was examined immediately after the accident, found to be in good working order, and exhibiting no signs of malfunctioning.

---

[5] Of course, most mechanical devices eventually wear out. The forklift was 15 or 16 years old the time of the mishap. While a manufacturer is normally not liable for a product-connected accident caused by ordinary wear and tear, in this case the Plaintiff's defect theory is based on the foreseeability of product failure caused, at least in part, by what could be deemed ordinary wear and tear. This may present another interesting proximate causation issue at trial.

- 6 -

(Bridges' depo. at pp. 22-23).

The Court is obligated to view the evidence, which includes Mr. Berry's opinion that the parking brake's failure to work correctly was due to normal wear and tear, and not a misassembly, in a light most favorable to the Plaintiff. The Court concludes that the evidence does not rise to the level that the fact finder would be obligated to conclude that the parking brake's neutralizing feature failed because it had been misassembled after it left Caterpillar's possession.[6]

Having determined that the cause of the parking brake's failure is an issue of fact for trial, what is the effect of such finding on the present legal issues. Caterpillar argues that it is fatal to Plaintiff's entire case. This argument depends on whether Mr. Freeman must negate the parking brake's failure as a cause of the accident as part of his case-in-chief. The Court is influenced by the fact that this is not a case in which the Plaintiff proposes to use circumstantial evidence to prove his defect. In other words, Plaintiff is not saying that "something was wrong" with the forklift because the accident occurred. Instead, Plaintiff has presented evidence pinpointing a specific defect.

This is the more common way of proving design defect. Ordinarily, a plaintiff must identify and prove a specific defect in order to prevail. In limited instances, however, a plaintiff may be relieved of the burden of proving a specific defect, but only where "common experience teaches the accident would not have occurred in the absence of a defect." *Higgins v. General*

---

[6] The Court has sometimes found it appropriate and efficient to submit material factual disputes to the jury on interrogatories. The Court directs the parties to consider the use of interrogatories in this case and to consider which factual disputes, if any, the resolution of which might be outcome determinative. In the Court's experience, it is frequently not possible to construct such interrogatories until the proof is in at trial. Nevertheless, the Court wishes to alert the parties to this possibility.

- 7 -

*Motors Corp.*, 287 Ark. 390, 392 (1985). As stated by the Arkansas Supreme Court:

> A plaintiff is no longer required to prove negligence in a strict liability claim but still must prove the product was defective so as to render it unreasonably dangerous, and that the defect was the cause of the injury. The mere possibility this has occurred is not enough, there must be evidence from which the jury can conclude that it is more probable than not.
>
> The difficult problems are those of proof by circumstantial evidence. Strictly speaking, since proof of negligence is not an issue, res ipsa loquitur has no application to strict liability, but the inferences which are the core of the doctrine remain, and are no less applicable. The plaintiff is not required to eliminate all other possibilities, and need not prove his case beyond a reasonable doubt. It is enough that he establishes a preponderance of probability. In the absence of direct proof of a specific defect, <u>it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, and thus creates a reasonable inference that the defendant is responsible for the defect</u>.

*Id.*, at 391-92 (emphasis added).

Thus, Arkansas law requiring a Plaintiff to "negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant" as part of his case-in-chief applies <u>only</u> where a Plaintiff seeks to be relieved of the obligation to identify and rely on a specific defect. *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59, 889 S.W.2d 750, 753 (1994); *Higgins, supra*. Plaintiff Freeman is not seeking to avoid the customary obligation to identify a specific product defect. Accordingly, circumstantial evidence defect cases do not control here.

While the condition of the forklift at the time of the accident and, more specifically, the parking brake's condition, are likely be hotly contested issues at trial, the Court cannot rule on this summary judgment record that, as a matter of law, the forklift was not supplied in a defective condition – that is, unsafe for reasonably foreseeable use – under Arkansas law.

### (B) Alternative Design

Caterpillar also contends that the Plaintiff's proposed safer alternative design has flaws. In evaluating such contention, the Court starts with the following established proposition of law: To prevail, Plaintiff does <u>not</u> have the burden of proving that his "'alternative safer design was available and feasible in terms of costs, practicality and technological possibility' but [h]e still has the burden of proving the existence of a defect by showing that a safer alternative design actually exists. He cannot carry this burden without showing that his proposed design will actually work." *Robinson v. Crown Equipment Corp.*, 2006 WL 897669 (E.D. Ark. 2006)(*quoting Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997)).

Thus, Plaintiff has the initial burden to presenting evidence to show that the proposed alternative design will actually work in the product. Caterpillar argues that Plaintiff must prove that the proposed alternative design "was actually in production for use on a two-speed transmission lift truck with an internal combustion engine in 1984." (Doc. 54, Supp. brief at p. 5). On this point, Caterpillar has overstated Plaintiff's burden under Arkansas law.

Plaintiff tenders expert testimony by Thomas Berry that the recommended alternative design – the inclusion of a deadman's switch or operator presence system – was available at the time this forklift was manufactured. In its prior Order, this Court requested more briefing on the issue of whether Caterpillar could have included a deadman's switch on the 1984 V80-E forklift. (July 17th 2006 Order at p. 11). If there was no evidence that Caterpillar could have designed its forklift to include such a switch and that such switch which would have operated to cure the alleged defect, then Plaintiff would not have met its burden of proof. The evidence before the Court, viewed in a light most favorable to the Plaintiff, creates a question of material fact whether the proposed alternative design was actually available and would have worked.

- 9 -

Plaintiff's expert Thomas Berry has submitted a supplemental affidavit which is sufficient for this purpose. Therein, Mr. Berry opines that a deadman's switch or OPS could have been installed on a two-speed transmission, combustion powered fork lift such as the V80E forklift and that the technology necessary to do so was available prior to 1984.

Mr. Berry's opinion is bolstered by the fact that the Hyster company, beginning in the late 1960's, had a shift design that electrically disengaged the transmission whenever the park brake was applied. Further, Mr. Berry has countered Caterpillar's assertion that no similar forklifts in 1984 utilized electric shifting on forklifts. Another company, Champ, on its Model 350 utilized electrical shifting of the forward and reverse valves on their transmissions in 1982. Mr. Berry also states that Caterpillar itself had an electrically controlled power shift transmission on some of its forklifts in 1980, as demonstrated by an advertisement for same in a 1980 magazine. Caterpillar attempts to draw distinctions between its forklifts and those forklifts and other equipment relied upon by Plaintiff as similar. In support, Caterpillar submitted the affidavit of Martin Robertson. The Court concludes that Mr. Berry's opinion, if permitted, is sufficient to create a fact question on this design issue.

Further, the Court notes that in *Leon v. Caterpillar*, 69 F.3d 1326 (7th Cir. 1995), the court dealt with a Caterpillar V90E forklift, a forklift arguably similar to the V80E in this case. The Seventh Circuit, applying Indiana law, noted that the forklifts were purchased in late 1987, and that the purchaser "required that [the forklifts manufactured by Caterpillar but sold by a dealer] be equipped with a deadman's switch" but "Caterpillar neither manufactured nor installed such a device," so the dealer, "decided to install a deadman's switch manufactured by Hyster, a

Caterpillar competitor." *Id.* at 1330-31.[7]

And, Plaintiff offers evidence to show that the cost to install the safety device was not excessive. Defendant previously had suggested that adding the safety features proposed by the Plaintiff might be cost prohibitive. However, in light of the new evidence submitted by Plaintiff's expert, Mr. Berry, there appears to be no summary judgment issue regarding whether the proposed alternative design was "feasible" due to cost. In any event, there is no unopposed evidence in this case that it would have been cost prohibitive to install the proposed deadman's switch or OPS. Mr. Berry testified in his Supplemental Affidavit regarding the costs to install the proposed alternative designs. For example, Mr. Berry testified that Hyster quoted a price in 1982 of $460 (gasoline) and $1045 (diesel) to equip their forklifts with an engine kill or OPS.[8] In sum, Plaintiff has come forward with a sufficient showing to dispute Defendant's generalized assertions that it was not "economically feasible" to equip the forklift with a deadman's switch.

Finally, the Court wishes to follow up briefly on its comments in its July 17th Order, questioning whether, in order to show that the proposed alternative design was feasible, such showing might encompass some requirement of economic feasibility. In light of the additional evidence provided by Mr. Berry, summary judgment is not appropriate based on a finding that the proposed alternative design was not "feasible" due to cost.

The Court notes that in the *Robinson* decision, Judge Wilson explicitly rejected the notion

---

[7] Caterpillar relies on this case for a different point. In *Leon*, the forklift ultimately failed when the seat, which had also been replaced after market, collapsed and caused the deadman's switch to malfunction. Caterpillar contends that this shows the inherent impracticality of adding such a feature. Such argument may prove persuasive at trial, but is an inadequate basis for summary judgment.

[8] Mr. Berry further suggests that Caterpillar would not have needed the more expensive version for diesel engines.

that risk utility factors, such as non-prohibitive cost, must be proven by a plaintiff as part of his initial burden of proof in a defect case. Arkansas has adopted a strict liability statute which lacks the "risk utility *element of proof* in defective product cases" which is found in the products liability statutes of some states. *Robinson, supra*, at * 3. This does not mean that the risk utility factors are irrelevant, only that such proof of such factors may not be required of the Plaintiff as part of his case-in-chief.

The Court agrees with *Robinson's* general analysis, but the question still remains: if a safer alternative design is proposed and a defendant comes forward with evidence to demonstrate that prohibitive cost, impracticality, or technological unfeasibility precluded the use of such design, must such case be submitted to the jury? This Court thinks not – because there is a point at which it must be said that the alternative design will not work. But again, the factual record at this time does not present this particular legal issue.

**(C)     Inadequate Warning**

Having now seen the specific warning proposed by Mr. Berry, it appears that the Court may have construed too narrowly the Plaintiff's failure to warn theory in its prior Order. In addition to the possibility of the parking brake failure in this case, it appears that there is the additional issue of a false neutral. Apparently, the forklift, while it may have indicated to Mr. Freeman that the engine was in neutral, may have been in a false neutral position. This could be considered an additional or alternative cause for the unmanned movement of the forklift that injured Mr. Freeman, whether or not he used the parking brake. Mr. Berry states that he demonstrated the false neutral when he examined the forklift. He also states that he demonstrated that the use of the parking brake did not appear to return the forklift to "neutral" as effectively when the parking brake was applied with the forklift in reverse rather than neutral.

(Berry, Exh. 13).

Plaintiff has now presented the specific warning proposed by Mr. Berry. Such warning would have advised:

# ! DANGER

[picture of forklift with arrows representing forward and backward movement]

### FORKLIFT CAN MOVE UNEXPECTEDLY

### THE FORKLIFT CAN MOVE UNDER POWER EVEN WHEN THE SHIFT LEVER IS APPARENTLY IN NEUTRAL

**PRIOR TO LEAVING OPERATOR'S SEAT:**

1. Place directional control in neutral.
2. Set parking brake. See Operator's Manual for proper parking brake adjustment procedures and test.
3. Lower forks to supporting surface when possible.
4. Shut off forklift engine.

### SERIOUS INJURY OR DEATH MAY RESULT

(See Warning, Exh. 12 to Berry's deposition, included in Pl.'s Exh. R).

Plaintiff also contends the forklift was defective because it failed to warn operators that powered movement could occur as long as the engine was running, even if the operator placed the forklift in neutral. Plaintiff further claims that such warning should have been affixed to the forklift itself.[9] Plaintiff argues that the false neutral potential created a latent defect, which required some warning on the product itself to reinforce the necessity of turning off the engine.

---

[9] Caterpillar included a warning in its operator's manual which accompanied the forklift when it was originally sold, but such manual was not included with the forklift when Nucor acquired it second-hand. Nor does it appear that Nucor ever sought to acquire a copy of an operator's manual.

There are numerous issues related to the Plaintiff's failure to warn theory, issues which will likely require the Court's consideration at trial. For example, Caterpillar included a warning in its operator's manual instructing that the forklift's engine should be turned off if left unattended. Under what circumstances must a manufacturer display a warning on the product itself? Additionally, it appears that there may be issues at trial regarding whether any warning placed on the forklift would have still existed when this accident occurred or whether such a warning would be contrary to OSHA regulations. The latter issues are raised however, in Caterpillar's *Daubert* motion and therefore may not be considered a proper basis for judgment as a matter of law.[10]

In sum, the Court recognizes that there are various issues regarding the warnings case, but said issues are not fully developed, either factually or legally. Therefore, they will not be addressed at this time. In making this ruling, the Court is further influenced by the fact that the proof on the warning claim is closely related to the proof on the defect claim. Thus, little trial time is likely to be saved by a pre-trial ruling on this point. More importantly, Caterpillar has not met its burden to demonstrate that it is entitled, at this point, to judgment as a matter of law.

## II. *Daubert* Issues regarding Thomas Berry's Testimony

Much of Caterpillar's argument to exclude Mr. Berry's testimony is closely related to Caterpillar's summary judgment contentions, which are addressed above. Caterpillar moves to exclude Thomas Berry's testimony based on the fact that he has failed to show that the proposed alternative design would have actually worked on the 1984 V80E forklift in question. The Court

---

[10] Caterpillar presents the argument in its *Daubert* motion that since the existing warnings were no longer present on the forklift when Mr. Berry examined it that it can not be presumed that any warning label placed on the machine at the time of manufacture would have remained when the accident occurred. At trial, this may present a serious causation issue, even one that may justify taking the issue from the jury.

accepts Caterpillar's statement that it did not install a deadman's switch on any of the forklifts that it manufactured. However, that is not dispositive of the issue here. Mr. Berry has presented evidence that Caterpillar could have, and should have, done so. And, we know from the *Leon* decision, *supra*, that a slightly different and later year model forklift, a V90E (this was a V80E) was modified at a customer's request to include a deadman's switch manufactured by Hyster.

In the *Robinson* case, Judge Wilson allowed Thomas Berry to testify because he found that his alternative design recommendations were "based on devices that exist in the working world." *Robinson, supra*, at * 6. Judge Wilson further rejected the contention that Mr. Berry was required to demonstrate the proposed alternative design was a "risk-free, feasible design for *all* purposes." *Id.*, at *5 (emphasis in original).

Caterpillar attacks Mr. Berry's testimony for its failure to demonstrate how the accident occurred or to recreate the accident. Caterpillar criticizes Mr. Berry for not testing the parking brake or attempting to recreate Plaintiff's accident. It does not appear that Mr. Berry ignored the parking brake, however, or failed to consider whether it was working or how it impacted the accident. He specifically concluded it was not working properly as a result of ordinary wear and tear. Further, he testified during his deposition that he did not believe the parking brake's failure was due to a missing part or misassembly. (Berry depo. at p. 31). Finally, he applied the parking brake to the machine while in reverse and found that the forklift continued to move in reverse. He performed other tests from which he concluded that the forklift's braking neutralizing features were not working correctly.

Caterpillar clearly disagrees with Mr. Berry's conclusions and believes his testing of the forklift was inadequate. The Court acknowledges that it has some concerns about Mr. Berry's testimony, but in light of the record as a whole, the Court concludes that Caterpillar's objections

go to the weight or credibility of Mr. Berry's conclusions rather than the admissibility of his testimony. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

The Court recognizes that a factor commonly considered in determining the admissibility of an expert opinion is whether the expert ruled out other possibilities. However, it is inappropriate to require an expert to "rule out *every* possible alternative cause" before admitting the testimony. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681 (8th Cir. 2001)(applying Minnesota products liability law)(omitting citations).

In support of this argument, Caterpillar again relies on circumstantial evidence defect cases to exclude Mr. Berry's causation testimony based on his failure to adequately exclude other possibilities for the forklift's failure. But, once again, the Court finds that such cases are factually distinguishable. For example, Caterpillar quotes extensively from a toxic tort case, *National Bank of Commerce v. Associated Milk Producers, Inc.*, 22 F.Supp.2d 942 (E.D. Ark. 1998). In *Associated Milk*, the plaintiff attempted to prove that his exposure to contaminated milk supplied to the cheese factory where he worked caused his laryngeal cancer. The plaintiff's proposed experts believed that his cancer was caused by toxin exposure, but they had no direct evidence of same. Thus, they were forced to exclude other possible causes of the plaintiff's cancer in order to permit an inference of causation. Without ruling out other potential causes there was no basis for the jury to find the required "but for" causation.

Conversely, "but for" causation is not at issue in this case – or least it is not an issue at this time on the present record. Plaintiff has offered a specific defect theory and it is one which –

if accepted by the jury – may allow the jury to find that the omitted safety device caused Plaintiff's injury.  Common sense tells us that if the engine had shut off when Freeman exited the forklift, this accident would not have occurred.

The Court recognizes that Caterpillar disagrees with Mr. Berry's testimony, but the Court cannot determine that his theory is so lacking in foundation to be unreliable on the present record.

While the Court is unlikely to permit Mr. Berry to testify regarding riding lawn mowers or devices other than similar forklifts,[11] it cannot conclude that his entire testimony should be disallowed.

The warning issue, while somewhat closer, still must be resolved in Plaintiff's favor at this time.  Caterpillar contends that Plaintiff must show that its warnings were inadequate and that Mr. Berry is not qualified to testify as a pure "warnings" expert because he lacks any specific training, knowledge or experience for his purported expertise in such area or for his warnings opinion in this case.  Plaintiff contends that Mr. Berry's testimony is helpful to the jury in determining whether the danger was inherent and foreseeable.

Under Plaintiff's negligent failure to warn theory, Caterpillar only has a duty to warn of dangers inherent or reasonably foreseeable.  AMI 1002.  It appears that Mr. Berry is qualified to testify about the nature of the forklift's operation and why the danger of it slipping into gear – whether placed in neutral or while the parking brake was engaged – should have been foreseeable to Caterpillar.  It further appears that such testimony is intertwined with his design defect theory.

---

[11] Such issues can be addressed in a motion in limine filed prior to trial, by oral motion after trial begins, or during Mr. Berry's testimony by timely objection to proposed testimony. Indeed, the Court contemplates placing certain limits on Mr. Berry's testimony to prevent him from invading the province of the jury on ultimate issues.

- 17 -

Once Mr. Berry establishes the forklift has a foreseeable (and dangerous) propensity to slip into gear while unmanned, such testimony appears to support the argument that a warning was necessary to advise users of this possibility. Mr. Berry has proposed such a warning.

The Court has considered the case of *Robertson v. Norton Company*, 148 F.3d 905 (8th Cir. 1998)(Arkansas law), in which Judge Loken, writing for the Eighth Circuit, determined that Judge Moody erred when he permitted an expert to testify that an existing warning label was inadequate. There, however, the product had a warning label, but the ceramics expert claimed the label's wording was inadequate. The reversal was driven by the Court's determination that the label's adequacy depended: "upon the language used and the impression that it is calculated to make upon the mind of an average user of the product." *Id.*, at 907. Thus, it was an inadequate warning case rather than a missing warning case. *Robertson* does not foreclose Mr. Berry's testimony that the forklift should have included a warning.

Berry acknowledges that he has never been qualified to testify purely as a "warnings expert." However, it does appear that he has been involved on at least one occasion in helping to design a warning for a product. Caterpillar is critical of the fact that Mr. Berry was unable to provide any quantitative data establishing that warnings reduce accidents. Again, this is an argument for trial, and does not render Mr. Berry's testimony inadmissible.

The Court concludes that the dispute in this case actually centers on Caterpillar's lack of any warning. Mr. Berry may testify regarding the latent defect he discovered and his opinion that Caterpillar should have included a warning directly on the forklift itself. The Court is inclined to permit him to tender his proposed warning as an example of a warning that would have been acceptable to warn users of the dangerous propensity. The Court will entertain additional

- 18 -

argument, with legal support, to limit his testimony beyond this point.[12]  For example, Mr. Berry may not be qualified to state that the proposed warning, if given, would have avoided this accident.  But, the extent of Mr. Berry's warnings testimony, if permitted, has not been briefed.

The Court declines on this record to exclude Mr. Berry's testimony that a warning was necessary on the product itself.

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendant Caterpillar's Motion for Summary Judgment (Docket No. 37) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT Defendant Caterpillar's Motion in Limine (*Daubert* motion) (Docket No. 56) to exclude Thomas Berry's testimony be, and it is hereby, DENIED.

IT IS SO ORDERED this  28th   day of March, 2007.

                                    _/s/Garnett Thomas Eisele_____
                                    UNITED STATES DISTRICT JUDGE

---

[12] Because such argument would be to limit, but not exclude, Mr. Berry's warnings testimony, it would the proper subject of a motion in limine.